UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LORI ANNE SHILTS, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:24-CV-368 JD |

**OPINION AND ORDER**

Plaintiff Lori Shilts sought disability insurance benefits under Title II of the Social Security Act, alleging that she became disabled in March 2020. Her claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Ms. Shilts was not disabled. The Appeals Council denied request for review, and Ms. Shilts now seeks judicial review in this Court. For the reasons below, the Court will affirm the Commissioner's decision.

**A.  Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be

"more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B.  Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine

whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C. The ALJ's Decision**

Ms. Shilts filed a Title II application for disability insurance benefits alleging disability beginning in March 2020. Her claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on November 30, 2022.

On December 22, 2022, the ALJ issued a decision finding that Ms. Shilts was not disabled. (R. at 17.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Ms. Shilts suffered from the following severe impairments: "degenerative disc disease and osteoarthritis of the lumbar spine; and sacroiliitis." (R. at 12.)

At Step 4, the ALJ determined Ms. Shilts's residual functional capacity ("RFC"),[1] finding that she can

> perform sedentary work[2] . . . except the claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant is limited to no repetitive bending, jumping, and climbing. The claimant can have no concentrated exposure to extreme cold or vibration. The claimant is limited to occasional operation of foot controls.

(R. at 13–14.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. (R. at 75–76.) The VE testified that the hypothetical person with Ms. Shilts's RFC

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

could perform her past relevant work as a data entry clerk, which she used to do thirteen years earlier. (R. at 76.)

In his decision, the ALJ acknowledged Ms. Shilts's hearing testimony, in which she described constant lower back pain and limited mobility worsened by activities like bending, lifting, and prolonged sitting or standing. She reported pain radiating to her legs, frequent spasms requiring rest and heat therapy, and flare-ups lasting up to three days. She claimed difficulty standing for more than 5–10 minutes, walking more than a few blocks, or sitting without frequent position changes. She also stated she struggles with daily tasks, cannot do laundry or vacuum, and has found only temporary relief from treatments including physical therapy, injections, and a rhizotomy. She frequently wears a brace and uses over-the-counter pain remedies and relies on Ibuprofen, Lidocaine, and Aspercreme, having declined stronger medications due to side effects. (R. at 14.

The ALJ found that, while Ms. Shilts's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. at 15.) According to the ALJ, Ms. Shilts has mainly received conservative and routine treatment, and clinical examinations show no significant worsening in her functional abilities, with most physical findings appearing normal. (*Id*.)

## D. Discussion

**(1)** *Past Relevant Work*

On appeal, Ms. Shilts first argues that this case should be remanded due to a change in agency policy related to the definition of past relevant work. She contends that the Social Security Ruling (SSR) 24-2p, which changed the definition of past relevant work to consider only the last five years, should apply to her case. The ALJ applied the previous rule of considering past relevant work from the last fifteen years (*see* R. at 16), which included work that ended in 2011, twelve years before the adjudication. Ms. Shilts submits that, under the new policy, her past work would not be considered relevant, and she would be found disabled due to her advanced age and lack of transferable skills. Ms. Shilts asserts that "this court certainly has the equitable power to return the case for application of the new rule" (Pl.'s Resp. Br., DE 26 at 6), but cites no authority in support of this proposition.

Ms. Shilts's argument lacks merit. The Court cannot remand the case based solely on the implementation of SSR 24-2p, as it was not in effect at the time the ALJ issued the decision. Social Security Ruling 24-2p went into effect on June 22, 2024, eighteen months after the ALJ's decision denying Ms. Shilts's claim. The ruling itself provides that the Agency and the reviewing courts will evaluate the claim under the rules then in effect:

> We will use this SSR beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. . . .

Social Security Ruling, SSR 24-2p, Titles II and XVI: How We Evaluate Past Relevant Work, 89 FR 48479-01SSR 24-2p n.1. Given the Agency's own ruling, the Court lacks authority to substitute its judgment for that of the Agency and cannot apply SSR 24-2p retroactively. *See Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993) ("[A] rule changing the law is retroactively applied to events prior to its promulgation only if, at the very least, Congress expressly

6

authorized retroactive rulemaking and the agency clearly intended that the rule have retroactive effect.") (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *Rita S. v. Dudek*, No. 24 C 5157, 2025 WL 1141179, at *3 (N.D. Ill. Apr. 16, 2025) (finding that SSR 24-2p does not apply retroactively) (citing *Minnis v. Commissioner*, No. 24-11281, 2025 WL 974570, at *3–4 (11th Cir. Apr. 1, 2025)).

### (2) *Dr. Parker's Medical Opinion*

Ms. Shilts next contends that the ALJ erred in formulating her RFC by failing to credit the functional limitations assessed by consulting examiner Dr. Stephen Parker. Among other restrictions, Dr. Parker opined that Ms. Shilts is unable to stand or walk for a total of at least 2 hours in an 8-hour workday. This limitation is inconsistent with the ALJ's conclusion that she can perform sedentary work, which generally requires the ability to stand or walk for at least 2 hours per workday. Because Dr. Parker's opinion, if credited, would rule out the full range of sedentary work under Social Security regulations, according to Ms. Shilts, the ALJ's committed a reversible error.

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the

7

treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, even though the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *See Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "At the end of the day, once the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quotation marks and citation omitted).

As a threshold matter, Ms. Shilts urges the Court to apply heightened scrutiny to the ALJ's rejection of Dr. Parker's opinion, citing *Beardsley v. Colvin*, 758 F.3d 834 (7th Cir. 2014), for the proposition that an ALJ's dismissal of a state agency examining doctor's opinion warrants

close review and a compelling explanation. (Pl. Rep. Br., DE 26 at 3.) But this argument overlooks regulatory changes implemented in 2017 that significantly alter how opinion evidence is weighed. *See Thielen v. King*, No. 23-CV-1378-BHL, 2025 WL 415638, at *3 (E.D. Wis. Feb. 6, 2025) (noting that *Beardsley* interpreted now-superseded 20 C.F.R. § 404.1527(c)(1), which applied only to claims filed before March 27, 2017). For claims filed after that date, as here, "the ALJ must not 'defer or give any specific evidentiary weight' to any medical sources." *Id.* (quoting 20 C.F.R. § 404.1520c(a)); *see also Townsend v. Kijakazi*, No. 22-CV-165, 2023 WL 3022548, at *3 (E.D. Wis. Apr. 20, 2023). Thus, contrary to Ms. Shilts's assertion, the fact that Dr. Parker conducted a physical examination as part of his consultative evaluation does not automatically entitle his opinion to greater weight. Of course, the fact that Dr. Parker examined Ms. Shilts is relevant but must be considered along with a number of other factors. *See* 20 C.F.R. § 404.1520c(3)–(5) (relationship with the claimant—length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship; specialization; and matters such as the source's familiarity with the case evidence and understanding of disability policies). Under the revised regulations, the ALJ was required to assess Dr. Parker's opinion based on supportability and consistency, just as with any other medical source. So long as the ALJ's evaluation meets the standard of minimal articulation and is reasonable, it must be upheld. *Thielen*, 2025 WL 415638, at *3.

In any event, unlike the ALJ in *Beardsley*, the ALJ here provided a sufficient explanation for discounting Dr. Parker's opinion and finding that Ms. Shilts could perform sedentary work, consistent with Dr. Fernando's assessment at the initial level of review. The ALJ specifically acknowledged Dr. Parker's opinion that Ms. Shilts could not stand or walk for at least 2 hours in an 8-hour workday. At the same time, he found that opinion unpersuasive because it was

unsupported by the broader medical record and inconsistent with Dr. Parker's own examination findings. Contrary to Ms. Shilts's contentions, the ALJ more than minimally explained both factors.

First, the ALJ found Dr. Parker's opinion unsupported by the overall medical record. The ALJ acknowledged Ms. Shilts's reports that she has significant difficulties with repetitive lifting, carrying, twisting, sitting, and standing, as well as decreased mobility due to back pain, which radiated to her legs. (R. at 14.) He also recognized that she had two flare-ups in 2022, during which she was bed-bound and treated only with muscle relaxants. (*Id.*) In addition, the ALJ noted that an MRI revealed certain mild anomalies in her spine (R. at 15), and that "physical examinations, including a consultative physical exam, did document instances of lumbar tenderness and spasm, stiffness to the lumbar spine and right hip, positive facet loading and straight leg raise on the right, and periods of slightly/mildly antalgic gait (*id.*). At the same time, the ALJ found that Ms. Shilts's medical examinations "largely document normal findings, including normal gait, intact strength throughout the lower extremities, negative straight leg raises, and normal reflexes and sensation," and that Ms. Shilts "did not use any assistive device." (R. at 15.) In addition, the ALJ noted that Ms. Shilts's treatment was conservative, with her generally relying on Ibuprofen, Lidocaine, and Aspercreme, and occasional use of heat/ice. (R. at 14–15.) Also, her impairments "appear to be controlled/stable with treatment as clinical examinations show no worsening in [Ms. Shilts's functional abilities" with "physical findings appear[ing] normal and updated imaging . . . unchanged." (R. at 15.)

Ms. Shilts does not argue that the record does not support the ALJ's latter findings, pointing instead to Dr. Parker's opinion that she cannot stand or walk for at least 2 hours during a workday. But the ALJ's finding—and his ultimately conclusion that the degree of her

10

functional limitations is not as severe as she alleges, or as opined by Dr. Parker—are based on substantial evidence. Whether Ms. Shilts, or this Court for that matter, believes that the evidence favoring her disability claim is more compelling is of no consequence upon review. Therefore, the ALJ's conclusion that Dr. Parker's opinion is not supported by overall evidence does not constitute a reversible error. *See Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("[A]n ALJ's job is to weigh conflicting evidence, and the loser in such a process is bound to believe that the finder of fact should have been more favorable to his cause. The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

     Next, the ALJ relied on evidence from Ms. Shilts's treating physicians, Dr. Johnson and Dr. Jordan, who repeatedly informed her then-employer (FedEx) over a one-year period that she was able to work, provided she avoided "repetitive bending, jumping, and climbing." (R. at 16.) The ALJ found this evidence significant because it was consistent with other medical findings and the two doctors provided the same limitation "over a significant portion of the period at issue." (*Id*.) Ms. Shilts argues that this evidence should be discounted because the doctors' notes were merely "work excuses" issued in response to her phone calls to help her retain her job while undergoing a prolonged and ultimately unsuccessful series of injections from Dr. Pai. (Pl. Br., DE at 18.) But this argument amounts to asking the Court to reweigh evidence which the Court may not do.

     Finally, the ALJ was persuaded by the state agency doctor's initial decision that Ms. Shilts was limited "to the sedentary exertional level" because of the diagnostic findings and her treatment history, as discussed above. While another state agency doctor opined upon

reconsideration that Ms. Shilts was less limited and could work at the light exertional level, the ALJ found that opinion unpersuasive because it did not reflect the fact that Ms. Shilts continued to experience "lumbar tenderness and mildly disturbed gait." (R. at 16.) This again demonstrates that the ALJ considered the record as a whole, taking into account evidence both favorable and unfavorable to Ms. Shilts. Ms. Shilts contends that the ALJ's reliance on the state agency physicians was misplaced because they did not review Dr. Parker's findings. But this claim is unsupported by the record. In fact, both state agency reviewers referenced Dr. Parker's evaluation in their assessments. (*See, e.g.*, R. at 82, 83.)

The ALJ also gave valid reasons for discounting Dr. Parker's opinion, noting that it was only partially supported by his own clinical findings. Specifically, while Dr. Parker imposed significant standing and walking restrictions, his examination documented full strength in all extremities and no use of an assistive device. (R. at 16; *see* R. at 515 (assessing normal strength in all extremities).)

In this case, the record contains evidence supporting both Ms. Shilts's claim of disability and a contrary conclusion. The ALJ is permitted to weigh conflicting evidence and decide which evidence to credit, provided the decision is supported by substantial evidence. *See Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision."); *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) ("[W]e will reverse only if the record compels a contrary result." (internal quotation marks and citation omitted)). Here, the ALJ's decision is supported by substantial evidence that Ms. Shilts's functional limitations aren't as significant as opined by Dr. Parker, and the record does not compel a contrary result.

**D. Conclusion**

For these reasons, the Court AFFIRMS the Commissioner's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: July 17, 2025

                                          /s/ JON E. DEGUILIO
                                          Judge
                                          United States District Court